IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JERRY D. HARRISON,<br>  Petitioner, | §<br>§<br>§ | |
| v. | § | Civil Action No. 4:12-CV-183-Y |
| | § | |
| RICK THALER, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>  Respondent. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

B. PARTIES

Petitioner Jerry D. Harrison, TDCJ # 1668008, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Pampa, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

In April 2007 petitioner was indicted on one count of aggravated sexual assault of a child younger than 14 years of age, for an offense occurring on or about July 30, 1993, in the District Court of Palo Pinto County, Texas, cause no. 13419. (State Habeas R., doc. 2[1]) Petitioner was also indicted on two counts of indecency with a child in cause nos. 13371 and 13372. (*Id.,* doc. 7) On April 28, 2009, pursuant to a plea agreement, petitioner pleaded guilty to aggravated sexual assault of a child in cause no. 13419, the state moved to dismiss cause nos. 13371 and 13372, and the trial court placed petitioner on ten years' deferred adjudication community supervision and assessed a $4,000 fine and court costs. (*Id.,* doc. 3) Petitioner did not appeal the order of deferred adjudication community supervision.

Thereafter, in May 2010, the state moved for an adjudication of guilt, and, on August 30, 2010, the trial court adjudicated petitioner's guilt and assessed his punishment at forty years' imprisonment, a $4,000 fine, and court costs. (*Id.,* docs. 5, 6) Petitioner appealed the judgment adjudicating guilt, however the Eleventh Court of Appeals dismissed the appeal as frivolous on January 20, 2011. *Harrison v. State,* No. 11-10-00277-CR, 2011 WL 227653 (Tex. App.–Fort Worth Jan. 20, 2011). Petitioner did not file a petition for discretionary review in the Texas Court of Criminal Appeals.

On May 20, 2011, petitioner filed a state postconviction application for writ of habeas corpus, raising one or more of the claims presented herein. (State Habeas R., doc. 1) The application was denied on July 27, 2011, without written order by the Texas Court of Appeals on the findings of the

---

[1]"State Habeas R." refers to the record in petitioner's state habeas application no. WR-76,033-01. The record is not paginated.

trial court. (*Id.* at cover) This federal petition is deemed filed on April 23, 2010. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

### D. Issues

Petitioner's claims are construed as follows:

(1) He received ineffective assistance of retained counsel during the adjudication proceedings because counsel failed to cross-examine the victim, investigate his case and his mental state, file an appeal and request permission to withdraw from his case, and abandoned him after the hearing;

(2) The prosecutor failed to keep his bargain because he told his trial attorney that if he pleaded guilty in cause no. 13419, cause nos. 13371 and 13272 would be dismissed and never mentioned again;

(3) The trial court abused its discretion by allowing the prosecutor to continue cross-examining him after his attorney objected to the prosecutor's mischaracterization of the testimony and by revoking his community supervision when he did not have the ability to pay court costs and do community supervision;

(4) He received ineffective assistance of trial counsel during the original plea proceedings because counsel was not open with him, failed to advise him regarding the proceedings, coerced him into pleading guilty, informed him that all three cases would be "thrown out" for lack of evidence, and failed to keep her bargain that cause nos. 13371 and 13272 would be dropped and never mentioned again;

(5) He received ineffective assistance of court-appointed counsel on appeal because counsel filed an *Anders* brief; and

(6) At the time of the plea proceedings, the statute of limitations for the offense had expired.

(Pet. at 6-7; Pet'r Mtn to Amend at 1-2; Pet'r Mem. at 1-5)

### E. Rule 5 Statement

Respondent contends that issues (4) and (6), matters relevant to the original plea proceedings, are time-barred under the one-year federal statute of limitations. 28 U.S.C. § 2244(d). Respondent

also contends that issue (6) is unexhausted and procedurally barred. *Id.* § 2254(b). Respondent does not contend the petition is subject to the successive petition bar. (Resp't Ans. at 4)

### F. STATUTE OF LIMITATIONS

28 U.S.C. § 2244(d) imposes a one-year statute of limitations for filing a petition for federal habeas corpus relief. Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

"[I]n dealing with two entirely separate and distinct judgments—one a deferred-adjudication order and the other a judgment of conviction and sentence—we are dealing with two separate and distinct limitation periods." *Tharpe v. Thaler*, 628 F.3d 719, 724 (5th Cir. 2010).

As to issues (4) and (6), matters relevant to the original plea proceedings, under § 2244(d)(1)(A), the state court's order of deferred adjudication became final triggering the federal statute of limitations on May 28, 2009, thirty days after petitioner pleaded guilty and received deferred adjudication community supervision. TEX. R. APP. P. 26.2(a)(1); *Tharpe*, 628 F.3d at 722-23; *Caldwell v. Dretke*, 429 F.3d 521, 526-27 (5th Cir. 2005); *Manuel v. Texas*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999). Thus, the one-year limitations period relevant to those issues expired one year later on May 28, 2010, absent any applicable tolling.

Petitioner's state habeas application filed on May 20, 2011, after the limitations period had already expired did not operate to toll the limitations period under § 2244(d)(2). *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). Nor has petitioner alleged or demonstrated that he is entitled to tolling as a matter of equity, which is available only in rare and exceptional circumstances when an extraordinary factor beyond the petitioner's control prevents him from filing in a timely manner. *Holland v. Florida*, 130 S. Ct. 2549, 2560-2565 (2010). Accordingly, issues (4) and (6) should have been raised in a federal petition filed on or before May 28, 2010. The petition filed on April 23, 2012, is therefore untimely as to those claims.[2, 3]

## G. DISCUSSION

### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated

---

[2] Because issue (6) is time-barred, it is not necessary to address the matter of exhaustion under § 2254(b)(1).

[3] As to the remaining issues, having calculated the limitations period, it is clear the petition is timely.

on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the particular case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). This presumption applies to all findings, express and implied. *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

2. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744

6

(1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Strickland*, 466 U.S. at 687, 697.

Petitioner raised his ineffective assistance claims under his first and fifth issues in his state habeas application, and the state habeas judge, who also presided over petitioner's trial, conducted a hearing by affidavit. Based on the state court record, counsel's affidavits, and his own personal recollection of the proceedings, the state habeas court entered factual findings refuting petitioner's claims and concluded petitioner was represented by effective counsel at each phase of the case. (State Habeas R., Doc. 10) The Texas Court of Criminal Appeals denied the state application without written order on the findings of the trial court. (*Id.* at cover) This constitutes an adjudication on the merits by the state courts and is entitled to the presumption of correctness. Thus, this court must defer to the state courts' determination of the claims unless it appears the decision was contrary to or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Petitioner claims he received ineffective assistance of retained counsel during the adjudication proceedings because counsel failed to cross-examine the victim and investigate the facts of the case, including his mental state, and because counsel abandoned him after the adjudication hearing by not filing a notice of appeal and request for permission to withdraw. (Pet. at 6; Pet'r Mem. at 2-4) In his affidavit, counsel responded to the allegations as follows:

> I was hired on or about June 23rd, 2010 to represent Mr. Harrison in defense of a Motion to Adjudicate filed in Cause No. 13419 . . . . I obtained a copy of the State's Motion to Adjudicate and immediately went to the Palo Pinto County Jail to meet with Mr. Harrison and discuss his defense to the Motion. Our first meeting lasted close to two hours and I went over the motion and the chronological sequence of events since he was placed on Community Supervision. I was very frank with Mr. Harrison about the legal implications of the Motion and what could happen if the Judge adjudicated him guilty of the underlying offense.
>
> After going over the motion in detail and discussing Mr. Harrison's financial situation, income, obligations, etc., it was evident to me that Mr. Harrison had placed himself in a very perilous position with the Court. Mr. Harrison had reported as directed to the Community Service office, however, he had failed to make his required payments as ordered by the Order Deferring Adjudication and as set out in the State's Motion to Adjudicate, had been dropped from the ordered Sex Offender Treatment Program due to missing too many meetings and falling way behind in payment for the Program, and had failed to perform community service in accordance with the Order.
>
> In my professional opinion, he did not have the evidence to prevail on a claim of inability to pay since he was receiving a weekly workers compensation check, lived with his mother, and had no demanding financial obligations other than child support, and recently, a small bank loan. Taking into account his income and obligations, he should have had enough money to meet the financial obligations imposed by the Court's Order Deferring Adjudication, including payment for attending the Sex Offender Treatment Program.
>
> After analyzing the evidence related to the Motion, we agreed on a strategy to plead true to the allegations in the Motion (since we really had no defense to them) and do everything possible to convince the Judge to be lenient and continue Mr. Harrison on community supervision by putting evidence of extenuating circumstances to try and explain his failure to comply with the Court's Deferred Adjudication Order.

With respect to the extenuating circumstances, Mr. Harrison had sustained an on the job injury to two of his fingers on March 13th, 2009, just prior to his original plea. At the time I began to represent him, he was still having trouble with his fingers and was about to have an additional surgery to hopefully correct his problems. Mr. Harrison was under the impression that he had plenty of time to "catch up" all the past due payments and would do so after his surgery. He also had a lawsuit pending related to the finger injuries and hoped to receive compensation through that avenue in the near future to catch up his payments. He had been terminated from his Sex Offender Counseling class for failure to attend and failure to make the required payments. He was told by the counselor, Sean Braun, that he would not be accepted back into the class until he caught up his payments for past sessions. Mr. Harrison had made some attempt to do Community Service but ran into difficulties because of his sex offender status. Our overall strategy was to have Mr. Harrison, after bonding out of jail, get back into the sex offender class immediately, spend all of his available income toward his arrearages with Community Supervision and so whatever it took to do all the community service possible before the actual hearing, which, at the time, had not been re-set. (the original setting of the hearing on the Motion to Adjudicate was June 23rd, 2009 but was apparently postponed so that Mr. Harrison could obtain legal representation). Also, he was going to re-schedule the surgical procedure on his fingers and hopefully get them fixed so he could return to full time work. He was able to bond out around the 1st of July and called me and we went over the strategy again and he advised that he would be back in the sex offender class immediately, get his fingers fixed, pay his fees, etc and do as much community service as possible. At the time, I had an outside hope that, if Mr. Harrison did as I outlined and showed immediate, complete, dedicated compliance, that perhaps I could persuade the District Attorney and the Community Supervision department to reconsider their motion and possibly even withdraw it, if the Court would allow it.

Unfortunately, Mr. Harrison did get the surgery on his fingers, but, despite constant prodding from me and his mother, failed to get back into the sex offender class, failed to perform any community service, and failed to make substantial payment toward his past due fees, fines, etc prior to the motion being re-set for August 9th, 2010. He did finally get back into the sex offender class the week prior [to] the hearing on the Motion, but by then, any chance of having the motion withdrawn was gone.

In response to Mr. Harrison's claim that I abandoned him after the sentencing, I would respond that this is simply not true. Mr. Harrison only hired me to represent him on the Motion to Adjudicate. He did not hire me to represent him on appeal. He understood this from our first meeting and discussions thereafter. As stated above, I had informed him in no uncertain terms of the ramifications of his guilty plea in the original proceeding with respect to appealing his conviction. He was well aware that

I would not be handling an appeal on his behalf as is evidenced by my letters to him after he was sentenced. Additionally, Judge Ray advised him at the hearing of his limited right of appeal and his right to an appointed attorney if he could not afford one. Even though I had not been hired to represent Mr. Harrison on appeal, I anticipated that he would want to appeal, regardless of the odds of success, since he had received a 40 year prison sentence. If he wanted to appeal, I did advise him and his mother that he should file a Notice of Appeal within 30 days and ask for a court appointed lawyer if they couldn't afford one, which I didn't believe they could. I verbally discussed this with his mother, Betty Rainey, on several occasions and sent two letters, one including prepared Pro Se documents, to Mr. Harrison to assist him in accomplishing these requests if he chose to do so. Mr Harrison got his Notice of Appeal filed and the Court appointed attorney Richard Ritchie of Mineral Wells, Texas as his attorney on appeal.

In response to Mr. Harrison's claim that I rendered Ineffective Assistance of Counsel for failing to request a psychiatric evaluation I would state that at no time in my numerous meetings and telephone conversations with Mr. Harrison did I believe him to be mentally incompetent, incapable of assisting in his defense, incapable of understanding the allegations being made against him, or in need of a psychiatric evaluation.

In response to Mr. Harrison's claim that I did not seek out character witnesses I would state that simply isn't true. I discussed this several times with Mr. Harrison and he advised me that the only people he knew who could say anything good about him would be his mother, Betty Rainey, and perhaps his girlfriend. Mr. Harrison advised me that his girlfriend had a substantial criminal record involving drugs. He also advised me that he did not want her to testify and he didn't want to put her through that.

In response to Mr. Harrison's claim that I failed to raise, on direct appeal, the objection I made to mischaracterization of his testimony I would state that I was not hired to represent Mr. Harrison on appeal and, although I provided assistance to make sure he didn't miss any deadlines, I did not represent him on appeal. As stated above, Richard Ritchie represented Mr. Harrison in his appeal.

In response to Mr. Harrison's claim that I failed to cross-examine the victim, I would state that, in my professional opinion, nothing would be gained on behalf of my client by doing so. It was my judgment that cross-examining the victim in this case would likely just elicit more damaging testimony, which I was trying to avoid.

In response to any claim relating to Mr. Harrison's cross-examination by the District Attorney, I would state that Mr. Harrison and I had gone over his being questioned in this manner many times. We had practiced in my office with me

asking similar questions, etc. My advice to him was to be humble, honest, sorrowful and repentant, in keeping with our strategy for leniency. He was aware that he would be questioned in this manner, and I had advised to remain calm, but, unfortunately, his demeanor became somewhat angry and combative which was inconsistent with, and detrimental to, our plea for leniency.

I regret that I was unable to achieve the result that Mr. Harrison wished, but I believe I did the best job I possibly could under the evidentiary circumstances and advocated creatively on his behalf. Unfortunately for Mr. Harrison, the Court was not persuaded by our evidence and arguments and decided that Mr. Harrison should not be continued on Community Supervision. I deny any charge against me of Ineffective Assistance of Counsel.

(State Habeas R., doc. 7)

Petitioner claims he received ineffective assistance of court-appointed counsel on appeal because counsel filed an *Anders* brief. (Pet'r Mem. at 2) In his affidavit, counsel responded to the allegation as follows:

The Grounds as defined by the Writ of Habeas Corpus are as follows:

Ground No. 1 - Denial of effective assistance of Counsel
Ground No. 2 - Abuse of Discretion by the Court.

Undersigned responds to all Grounds together as follows:

On September 30, 2010, I was appointed by the trial Court for Applicant's/Defendant's (hereinafter "Defendant") appeal of the decision to adjudicate and the assessment of punishment. I reviewed the entire record of the proceedings and was unable to find any non-frivolous error. I filed an *Anders* Brief, along with a Motion to Withdraw which was granted by the Eastland Court of Appeals on January 20, 2011.

Most of Defendant's allegations under his grounds are directed at other attorneys during various stages of Defendant's case. Some of Defendant's allegations are not contained in the record of which I was reviewing. My job was to review the cold record to see if there were "possible important issues" or arguable issues of law. I have once again reviewed the entire record, including the cross-examination of the Defendant by Mr. Burns. I do not see any reversible error, arguable issues of law, or improper rulings by the trial court. The Defendant does not have to testify at a motion to adjudicate hearing. If the Defendant elects to testify,

11

> the State may cross-examine and has broad latitude. I did not neglect my duty in any way.

(*Id.*, doc. 9) (citation omitted)

The state habeas court entered the following order:

> After having reviewed the pleading and instruments on file in Cause No. 13419, The State of Texas vs. Jerry Don Harrison and the petition on file in this cause and the respective affidavits of Applicant's three (3) attorneys, the Court is of the opinion and does hereby find that there are no controverted, previously unresolved facts material to the legality of the Petitioner's confinement.
>
> The Court finds that the Applicant was assisted and represented by effective counsel at all three (3) phases of the case. Trial Counsel, (Cora Moore), obtained an offer of probation (deferred adjudication) from the District Attorney and secured approval of same by the Court. Applicant was fully aware of the consequences of his plea and such plea was knowingly and intelligently made and freely and voluntarily given. His attorney at the Motion to Adjudicate phase was not deficient. He discussed and planned a case strategy with Applicant, advised him of remedial steps to take and even practiced Applicant's testimony (including suggestions for appropriate demeanor during cross-examination). Mr. Dixon also went perhaps beyond the scope of his employment to provide documents, a letter of transmittal and even a stamped envelope to make sure Applicant's right to appeal was preserved.
>
> Mr. Ritchie, the attorney on appeal did file an Anders Brief (which he was ethically bound to do since there were no non-frivolous issues or errors about which to complain. The Application should be denied.

(*Id.*, doc. 10)

Although the state habeas court did not expressly rely upon *Strickland* and the Texas Court of Criminal Appeals denied relief without written order, this court may assume the state courts applied the correct "clearly established federal law" in making its decision. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004). Thus, assuming the state court applied the *Strickland* attorney-performance standard, the state courts' adjudication of petitioner's ineffective assistance claims was

neither contrary to, or an unreasonable application of, *Strickland* nor unreasonable given the evidence before the courts.

Counsel's decision during the adjudication hearing not to cross-examine the victim so as to avoid the introduction of additional damaging evidence against petitioner was sound trial strategy. Furthermore, even assuming counsel was aware petitioner was taking Zanex and Prozac for depression and attended several sex offender treatment sessions with Sean Braun through the psychiatric therapy services, counsel is not ineffective by not further investigating an alleged mental defect where counsel has no reason to believe at the time of the proceeding that petitioner suffers from a mental defect. (RR, vol. 2 at 38; Pet'r Mem. at 2) *West v. Johnson,* 92 F.3d 1385, 1408-09 (5th Cir. 1996); *East v. Scott,* 55 F.3d 996, 1006 (5th Cir. 1995); *Andrews v. Collins,* 21 F.3d 612, 623 (5th Cir. 1994) (quoting *Burger v. Kemp,* 483 U.S. 776, 795 (1987)). In addition, the record clearly refutes petitioner's assertion of abandonment. Although counsel was not retained to represent petitioner on appeal, counsel nevertheless provided information and prepared documents to assist petitioner in filing a timely notice of appeal, and petitioner was thereafter appointed appellate counsel.

Finally, petitioner's conclusory allegation that appellate counsel was ineffective "by simply filing an Ander's brief... causing harm to [his] rights" is insufficient to raise a constitutional claim. The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith v. Robbins,* 528 U.S. 259, 278 (2000). Because there is no right to appellate counsel in the absence of a non-frivolous issue for appeal, a petitioner challenging the effectiveness of his appellate attorney must demonstrate deficient performance by showing that his counsel "was objectively unreasonable

in failing to find arguable issues to appeal–that is, that counsel unreasonably failed to discover non-frivolous issues and raise them." *Robbins*, 528 U.S. at 285. If the petitioner succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

Petitioner fails to show that he was denied effective assistance of counsel because he does not identify a non-frivolous issue that could have been raised on appeal and upon which he would have prevailed. Bald assertions are insufficient to support a claim for habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### 3. Prosecutorial Misconduct

Petitioner claims the prosecutor failed to keep his bargain that if petitioner pleaded guilty in cause no. 13419, cause nos. 13371 and 13372 would be dismissed and never mentioned again. (Pet. at 6) During the adjudication hearing, the record reflects the prosecutor questioned the victim about "other incidents and other charges that were filed in this case that were dismissed as a result of the plea bargain" and whether "those individuals" were going through therapy as well. (RR, vol. 3, at 19)

Nothing in the record reflects it was a condition of the plea agreement that the state not mention the charges dismissed in cause nos. 13371 and 13419 in a subsequent proceeding. To the contrary, the record refutes the claim. The trial judge, who also presided over the adjudication proceedings, noted the plea agreement in the "Criminal Docket" sheet as follows: "10 yrs deferred adjudication + $4,000 fine[,] #13,371 & 13,372 conduct acknowledged by [defendant] under § 12.45 per plea agreement & is to be considered by Court in assessing punishment in this case if [defendant] is ever adjudicated guilty," and reiterated the plea agreement at the commencement of the August

9 hearing, adding: "And the Court noted [at the time of the original plea] that as part of the plea agreement that if the defendant was ever adjudicated guilty, the Court was to take into consideration his acknowledged guilt as to the offenses also charged under Causes 13371 and 13372, pursuant to the provisions of Section 12.45 of the Penal Code." (Clerk's R. at 3; RR, vol. 2 at 6)

### 4. Abuse of Discretion

Petitioner claims the trial court abused its discretion by allowing the prosecutor to continue cross-examining him after defense counsel objected to mischaracterization of his testimony and by revoking his community supervision when he did not have the ability to pay the court costs and do community service. (Pet. at 7; Pet'r Mem. at 4-5)

Under state law, the right to confront witnesses "includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). The scope of permissible cross-examination is "necessarily broad." *Carroll v. State,* 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).

At the August 30 hearing, the following exchange occurred:

[Prosecutor]:  Mr. Harrison, somehow, through your lawyer, you were able to avoid a conviction for a first-degree felony for aggravated sexual assault . . . . You avoided a felony conviction in this case, didn't you? Yes or no.

[Petitioner]:  I believe that's right.

[Prosecutor]:  You're on deferred adjudication. And according to you, we're supposed to wait a year and four months for you to comply with the Court's order, right? In other words, you get that free. That's your position isn't it? Right?

[Petitioner]:  I made poor choices, sir.

15

[Prosecutor]: And so now you sit here and say, "Well, don't count all of the things I failed to do for the last year and four months, and let's give me another chance." That's your position, right?

[Defense Counsel]: Your Honor, object to that mischaracterization of his testimony.

[Prosecutor]: I just asked him if that's right.

[The Court]: I'll allow him to cross-examine.

[Prosecutor]: Is that right or not?

[Petitioner]: Repeat.

[Prosecutor]: You just want us to wipe out the last year and four months where this Court ordered you to do certain things, and you didn't do them. We're supposed to forget that, right?

[Petitioner]: I'm not asking you to forget anything. I'm asking for another chance.

[Prosecutor]: Well, how long, Mr. Harrison, does it take for an aggravated sexual assault of a child for you to dodge that bullet – how long are we supposed to wait for you to get it and comply with probation? How long? A year and four months?

[Petitioner]: (No response.)

[Prosecutor]: Are you going to answer me or not?

[Petitioner]: No, sir. I don't know how to answer that.

[Prosecutor]: Well, how many second chances did you give that kid sitting back there?

(RR, vol. 3, at 15-17)

Clearly, the trial court determined the prosecution's questioning was within the broad scope of cross-examination. Further, petitioner fails to cite to relevant legal authority that state trial courts' rulings on the scope of prosecutorial cross-examination are cognizable on federal habeas review.

Finally, as a matter of state law, a plea of true is generally sufficient to support revocation. *Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. 1979). However, revocation for failure to pay fees, alone, when an appellant is unable to pay the total amount denies federal constitutional due process of law. *Bearden v. Georgia*, 461 U.S. 660, 673 (1983) (holding that revocation of probation for "failure to pay a fine or restitution" when the probationer did not have the ability to pay is "contrary to the fundamental fairness required by the Fourteenth Amendment").

The state alleged in its motion to adjudicate that petitioner failed to comply with certain conditions of his community supervision as follows:

- failed to perform at least 10 hours per month of community service work for the months of September through December, 2009, and January through April 2010;

- failed to pay fine and court cost payments in the amount of $100 per month for the months of September through December 2009 and January through April 2010;

- failed to pay supervision fees in the amount of $50 per month for the months of September, November, and December 2009 and January through March 2010;

- failed to pay $30 to the Palo Pinto County Crime Stoppers Program on or before October 26, 2009;

- failed to pay $5 each month during the period of community supervision pursuant to article 42.12, § 19 of the Texas Code of Criminal Procedure for the months of September through December 2009 and January through April 2010; and

- failed to attend, participate and successfully complete Sex Offender Treatment Program.

(State Habeas R., doc. 5)

Petitioner pleaded true to the allegations, instead of not true due to inability to pay. Under state law, his plea was sufficient, standing alone, to support the revocation of his community supervision. *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979). The record also reveals

petitioner received $338 per week in worker's compensation (after a child-support deduction), lived with his mother, had no financial obligations save for child support and a small loan, and was capable of making the required payments but, instead, made "poor choices" prioritizing his money. (RR, vol. 2, at 30-41) Nevertheless, even assuming petitioner was financially unable to pay the fees, his community supervision was revoked on other grounds, rendering *Bearden* inapplicable.

In summary, petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. The state courts' determination that petitioner was not entitled to relief does not appear to be contrary to, or involve an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## II. RECOMMENDATION

Petitioner's petition for writ of habeas corpus should be dismissed as time-barred as to issues (4) and (6) and denied as to the remaining issues.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until December __11__, 2012. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection,

and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until December __11__, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November __20__, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE